# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CLARINDA ROSE GOPHER, | No. 1:16-cv-03100-MKD |
| Plaintiff, | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| | ECF Nos. 17, 22 |
| Defendant. | |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 17, 22. The parties consented to proceed before a magistrate judge. ECF No. 7. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's motion (ECF No. 17) and grants Defendant's motion (ECF No. 22).

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 2

ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial

gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work

activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is

capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 416.920(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

Plaintiff applied for supplemental security income benefits on November 27, 2012, alleging an amended onset date of January 14, 2010.  Tr. 64, 200-05.  The application was denied initially, Tr. 130-33, and upon reconsideration, Tr. 137-39.  Plaintiff appeared for a hearing before an administrative law judge (ALJ) on October 28, 2014.  Tr. 42-99.  On November 26, 2014, the ALJ denied Plaintiff's claim.  Tr. 16-41.

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since November 27, 2012, the application date.  Tr. 22.  At step two, the ALJ found Plaintiff has the following severe impairments: diabetes mellitus; obesity; depressive disorder not otherwise specified (NOS); post-traumatic stress disorder (PTSD) and/or anxiety disorder NOS; personality disorder NOS; and substance use disorder.  Tr. 22.  At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or equals a listed impairment.  Tr. 23.  The ALJ then found that Plaintiff has the RFC

> to perform light work as defined in 20 C.F.R. § 416.967(b) without further physical limitations.  She can perform unskilled, repetitive, and routine work.  She should not have contact with the general public.  She can have

occasional contact with coworkers and supervisors. She will be off-task for ten percent of her work shifts, but will otherwise be able to meet production standards. She will be absent from work once a month or less.

Tr. 25.

At step four, the ALJ found Plaintiff is able is to perform her past relevant work as a housekeeper and an agricultural sorter. Tr. 34. In the alternative, at step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs in significant numbers in the national economy that Plaintiff can perform, such as production assembler and hand packager. Tr. 36. The ALJ concluded Plaintiff has not been under a disability, as defined in the Social Security Act, from November 27, 2012, the application date, through the date of the decision. Tr. 36.

On May 4, 2016, the Appeals Council denied review, Tr. 1-7, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3); 20 C.F.R. § 422.210.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income benefits under Title XVI of the Social Security Act. ECF No. 17. Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly weighed the medical opinion evidence;

2. Whether the ALJ properly discredited Plaintiff's symptom claims; and

3. Whether the ALJ's step five determination is supported by substantial evidence.

ECF No. 17 at 2.

## DISCUSSION

### A. Medical Opinion Evidence

First, Plaintiff faults the ALJ for discounting the opinions of examining sources Mr. Moen, Dr. Rodenberger, Dr. Seymanski, Dr. Coleman, Dr. Burdge, and Dr. Cline. ECF No. 17 at 5-16.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201–02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ

may reject it only by offering "clear and convincing reasons that are supported by

substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

"However, the ALJ need not accept the opinion of any physician, including a

treating physician, if that opinion is brief, conclusory and inadequately supported

by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228

(9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or

examining doctor's opinion is contradicted by another doctor's opinion, an ALJ

may only reject it by providing specific and legitimate reasons that are supported

by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v Chater,* 81

F.3d 821, 830–31 (9th Cir. 1995)).

The opinion of an acceptable medical source, such as a physician or

psychologist, is given more weight than that of an "other source." 20 C.F.R. §

416.927(2016); *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996). "Other

sources" include nurse practitioners, physicians' assistants, therapists, teachers,

social workers, spouses and other non-medical sources. 20 C.F.R. § 416.913(d)

(2016). However, the ALJ is required to "consider observations by non-medical

sources as to how an impairment affects a claimant's ability to work." *Sprague v.

Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). Non-medical testimony can never

establish a diagnosis or disability absent corroborating competent medical

evidence. *Ngyuen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). Pursuant to *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993), an ALJ is obligated to give reasons germane to "other source" testimony before discounting it.

### 1. Mr. Moen and Dr. Rodenberger

In October 2010, social worker Dick Moen, MSW, evaluated Plaintiff. Tr. 31 (citing Tr. 273-74). Plaintiff contends this evaluation was signed by psychiatrist Dr. Rodenberger, who is an "acceptable source," and for that reason, the opinion should be treated as Dr. Rodenberger's. ECF No. 17 at 15 (citing Tr. 275, 771); Social Security Ruling (SSR) 06-03p. Plaintiff is partially correct.[1] The

_____

[1] Plaintiff is correct insofar as Dr. Rodenberger signed the form. Dr. Rodenberger's signature does not, however, indicate agreement with or endorsement of the opinion. The last page of the evaluation, signed and dated October 15, 2010, by Mr. Moen, lists only Mr. Moen as the examiner. Tr. 275. Dr. Rodenberger signed and dated the form October 20, 2010; the form above his signature states the doctor is a "releasing authority signature/title (for use by the Veteran's Administration) or area of advanced training for ARNP." Tr. 275. Because Dr. Rodenberger did not endorse the opinion, the ALJ properly considered this as the opinion of a social worker who is an "other source."

Court concludes, consistent with the ALJ's characterization, Tr. 31, that the opinion is social worker Mr. Moen's, rather than psychiatrist Dr. Rodenberger's.

Mr. Moen noted Plaintiff alleged symptoms and limitations from three impairments: depression, post-traumatic stress disorder (PTSD) and panic disorder. Tt. 269. Mr. Moen further noted Plaintiff alleged that, as a result of depression, she felt worthless and was unable to concentrate; as a result of PTSD, Plaintiff did not trust people and thought they were judging her; and as a result of panic disorder, Plaintiff reported she suffered panic attacks five times a week and was very fearful around unfamiliar places or people. Tr. 269. Mr. Moen assessed marked to severe limitations in Plaintiff's ability to make decisions, learn new tasks, perform routine tasks, maintain appropriate behavior, interact appropriately in public contacts, relate appropriately with coworkers and, as the ALJ noted, the ability to understand and follow even simple directions. Tr. 31 (citing Tr. 273). The ALJ gave this opinion "minimal to no weight." Tr. 31.

Because Mr. Moen as a social worker is an "other source," 20 C.F.R. § 416.913(d), the ALJ was required to provide germane reasons for rejecting Mr. Moen's opinion. "The ALJ may discount testimony from . . . 'other sources' if the ALJ 'gives reasons germane to each witness for doing so.'" *Molina*, 673 F.3d at 1111 (quoting *Turner v. Comm'r of Soc. Sec. Admin.,* 613 F.3d 1217, 1224 (9th Cir. 2010)).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 11

1    First, the ALJ found Mr. Moen rendered his opinion two years before

2    Plaintiff's SSI application date.  Tr. 31.  Medical opinions that predate the alleged

3    onset of disability are of limited relevance.  *Carmickle v. Comm'r of Soc. Sec.*

4    *Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008).  Here, Plaintiff alleged an amended

5    onset date of January 10, 2010.  Because Mr. Moen rendered his opinion on

6    October 15, 2010, after Plaintiff's alleged onset date of January 14, 2010, Tr. 65,

7    this was not a germane reason to give limited weight to Mr. Moen's opinion.

8    Next, the ALJ rejected Mr. Moen's opinion because he is not an acceptable

9    medical source.  Tr. 31.  As noted, nonacceptable, "other sources" include social

10   workers.  20 C.F.R. § 416.913(d).  Although the opinion of an acceptable source is

11   given more weight than that of an "other source,"[2] the ALJ is required to "consider

12   observations by non-medical sources as to how an impairment affects a claimant's

13   ability to work."  *Sprague*, 812 F.2d at 1232.  Non-medical testimony can never

14   establish a diagnosis or disability absent corroborating competent medical

15   evidence.  *Nguyen*, 100 F.3d at 1467.  Pursuant to *Dodrill*, 12 F.3d at 919, an ALJ

16   is obligated to give reasons germane to "other source" testimony before

17   discounting it.  This was not a germane reason.

18

19   _____

20   [2] 20 C.F.R. § 416.927; *Gomez*, 74 F.3d at 970-71.

1        Third, the ALJ rejected Mr. Moen's opinion because his conclusions were

2   based on a one-time examination and Mr. Moen had no other "documented

3   familiarity" with Plaintiff.  Tr. 31.  The fact that Mr. Moen examined Plaintiff one

4   time is not a legally sufficient basis for rejecting the opinion.  The regulations

5   direct that all opinions, including the opinions of examining providers, should be

6   considered.  20 C.F.R. § 416.927(b), (c).  Further, the ALJ gave "significant

7   weight" to the state reviewing psychologists' opinions who never examined

8   Plaintiff.[3]  Tr. 23, 34.  The number of visits to a particular provider may be a factor

9   in assigning weight to the opinion, but it is not the only factor, nor is it a sufficient

10  basis upon which to reject an opinion.  20 C.F.R. § 416.927(c).  Thus, the fact that

11  Mr. Moen examined Plaintiff one time is not a germane reason to reject Mr.

12  Moen's opinion.

13       Fourth, the ALJ found Mr. Moen provided no objective basis for the

14  assessed marked to severe limitations, including no documented mental status

15  evaluation, contrary to the directions contained in the evaluation form.  Tr. 31

16

17  _____

18  [3] If the ALJ could reasonably reject Mr. Moen's opinion because he examined

19  Plaintiff one time, it follows that the opinions of the state reviewing psychologists

20  who never examined Plaintiff must also be rejected.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 13

(citing Tr. 269).[4]  The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings.  *Bray,* 554 F.3d at 1228 (internal quotation marks and brackets omitted).  Mr. Moen did not conduct a mental status evaluation, nor any other objective testing.  This was a germane reason to give limited weight to Mr. Moen's opinion.

Fifth, the ALJ assigned little weight to Mr. Moen's opinion because his conclusions "appear to be based mostly on the claimant's subjective complaints and symptoms."  Tr. 31.  A physician's opinion may be rejected if it is based on a claimant's subjective complaints which were properly discounted.  *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999); *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).  However, when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion.  *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014); *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008).  Mr.

---

[4] The form directs that "[o]bjective MSE, including raw data and sub scores, must be attached (serial 7's, etc.)."  Tr. 269.  The ALJ is correct that Mr. Moen did not reference an MSE and there are no attachments to his report.

Moen's report appears to be based on an interview and behavioral observations, but not on any objective findings based on test results. *See, e.g.*, Tr. 269 (Plaintiff described symptoms, such as panic attacks five times a week); Tr. 270 (Mr. Moen indicated he observed symptoms of depression: Plaintiff was "very tearful"). Thus, the ALJ reasonably concluded that Mr. Moen's opinion must have been more heavily based on Plaintiff's complaints which were properly discounted, *infra*, than on clinical findings, because Mr. Moen performed no testing. Tr. 31. The ALJ's interpretation of the evidence is reasonable and this was a germane reason for rejecting the opinion.

Sixth, the ALJ found that Mr. Moen's opinion failed to mention any substance abuse issues, past or present, which rendered his opinion less reliable, given Plaintiff's long record of substance abuse.[5] Tr. 31. An opinion may be entitled to less weight if it is made without knowledge of a claimant's substance abuse. *See Coffman v. Astrue*, 469 Fed. App'x 609, 611 (9th Cir. 2012) (affirming ALJ's rejection of examining psychologist's opinion, in part, due to the fact that "plaintiff periodically concealed" his substance abuse from providers); *Serpa v. Colvin*, 2013 WL 4480016, *8 (E.D. Wa., Aug. 19, 2013) (affirming ALJ's

---

[5] Plaintiff testified she has had drug and alcohol problems since she was 12 years old. Tr. 58.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 15

rejection of a physician's opinion because it was made without knowledge of the claimant's substance abuse and narcotic-seeking behavior). Here, the ALJ noted, for example, Plaintiff testified she had her own business in 2009 producing and selling food and jewelry, but this work ended because of her substance abuse. Tr. 31 (citing Tr. 63, 66-67, 69) (Plaintiff testified that she worked with her mother and brother making and selling fry bread and beadwork, the sales were mainly by phone, and the work ended when her brother got in trouble and Plaintiff got mentally sick). Plaintiff testified that her daughter died in January 2009 and Plaintiff tried to kill herself "with alcohol and drugs." Tr. 31 (citing Tr. 69-70). The record supports the ALJ's finding. This was a germane reason to give limited weight to Mr. Moen's opinion.

Although the ALJ considered some reasons that were not germane, the ALJ cited other germane reasons supported by substantial evidence which support the ALJ's rejection of Mr. Moen's opinion. *See, e.g., Morgan*, 169 F.3d 595, 601-02 (9th Cir. 1999). Therefore, the outcome is the same despite the improper reasoning. Errors that do not affect the ultimate result are harmless. *See Parra v. Astrue*, 481 F.3d 742, 747 (9th Cir. 2007); *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990); *Booz v. Sec'y of Health and Human Servs.*, 734 F.2d 1378, 1380 (9th Cir. 1984).

## 2. *Dr. Seymanski*

In April 2011, Nicole Seymanski, Psy.D., evaluated Plaintiff. Tr. 31-32 (citing Tr. 276-83). Plaintiff summarized her current mental health symptoms as low self-esteem, regret for things such as not graduating from high school,[6] and the "one thing I have going for myself is that I am in treatment but I do not feel good about this." Tr. 276. Dr. Seymanski administered tests, including the Rey – 15 (which showed no indication of malingering); the BDI (Beck Depression Inventory) (Plaintiff's score of 48 indicated severe symptoms of depression); and the BAI (Beck Anxiety Inventory[7]) (Plaintiff's score of 38 indicated severe symptoms of anxiety, by self-report). Tr. 276. Dr. Seymanski diagnosed Plaintiff with major depressive disorder, recurrent, severe, without psychotic features;

---

[6] Plaintiff told Dr. Seymanski that she dropped out of school in the 9th grade and said she also began drinking around this time. Tr. 276.

[7] The Beck Anxiety Inventory, developed by Dr. Aaron T. Beck, is a commonly used measure of anxiety. It is a brief, 21 item measure of anxiety with a focus on somatic symptoms of anxiety that was developed as a measure adept at discriminating between anxiety and depression. *See* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3879951/

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 17

anxiety disorder NOS (rule out PTSD); alcohol dependency in full sustained

remission; and cocaine abuse in full sustained remission. Tr. 278. She assessed

moderate limitations in the ability to be aware of normal hazards, maintain

appropriate behavior and perform routine tasks, Tr. 31-32 (citing Tr. 279). In

addition, Dr. Seymanski assessed marked limitations in the ability to perform

effectively in a work setting with even limited public contact. Tr. 32 (citing Tr.

279). The ALJ gave Dr. Seymanski's assessed moderate to marked limitations

little weight. Tr. 32.

Because Dr. Seymanski's opinions regarding moderate and marked

limitations were contradicted by Dr. Fligstein, Tr. 106-16, and Dr. Brown,[8] Tr.

122-29, the ALJ was required to provide specific and legitimate reasons for

rejecting portions of Dr. Seymanski's opinion. *Bayliss*, 472 F.3d at 1216.

_____

[8] In January 2013, state agency psychological consultant Diane Fligstein, Ph.D.,

opined Plaintiff was able to perform simple and repetitive tasks and maintain

adequate concentration, persistence and pace with such tasks despite episodic

deficits in concentration and pace; was able to tolerate superficial interaction with

others; and was able to adjust to routine workplace changes. Tr. 34 (citing Tr. 113-

14). In March 2013, Michael Brown, Ph.D., another agency consultant, affirmed

Dr. Fligstein's opinion. Tr. 34 (citing Tr. 122-29).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 18

The ALJ first found that the assessed moderate to marked limitations lacked an objective basis. Tr. 32. The ALJ need not accept the opinion of any physician if that opinion is brief, conclusory, and inadequately supported by clinical findings. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). The ALJ found, for instance, that a month prior to Dr. Seymanski's April 2011 evaluation, Plaintiff told treatment provider Kathryn Shaw, ARNP, that she had been sober for one year, she began psychiatric medication a month earlier and her depression was improving with this treatment. Tr. 32 (citing 477). As another instance of contradictory objective findings, the ALJ found that upon exam, also in March 2011, Plaintiff displayed normal affect and there was "no unusual anxiety or evidence of depression" observed. Tr. 32 (citing Tr. 481). This was a specific, legitimate reason to give limited weight to Dr. Seymanski's opinion.

Next, the ALJ discounted Dr. Seymanski's assessed moderate to marked limitations because they were inconsistent with Plaintiff's activities. Tr. 32. An ALJ may discount an opinion that is inconsistent with a claimant's reported functioning. *Morgan*, 169 F.3d at 601-02. The ALJ found, as example, Plaintiff told Dr. Seymanski her daily activities included playing games and attending appointments and Plaintiff reported she primarily used public transportation. Tr. 32 (citing Tr. 280) (Plaintiff reported she attended weekly sessions for alcohol use) (Tr. 278) (Plaintiff reported she played games on her phone); Tr. 283 (on the MSE

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 19

Plaintiff indicated she used public transportation). The ALJ is correct that the activities of regularly using public transportation and keeping appointments is inconsistent with a moderate limitation in the ability to aware of normal hazards, maintain appropriate behavior, and perform routine tasks since a person with such limitations is unlikely to be able to accomplish these tasks. Similarly, the ALJ is correct that Seymanski's assessed marked limitation in the ability to perform effectively with even limited public contact is also inconsistent with the ability to use public transportation, since that involves public contact, as does keeping regular appointments. This was a specific, legitimate reason to give limited weight to Dr. Seymanski's opinion.

Third, the ALJ gave little weight to Dr. Seymanski's opinion because the level of severity implicated by it was inconsistent with Dr. Seymanski's contemporaneous examination findings. Tr. 32. A medical opinion may be rejected by the ALJ if it is conclusory, contains inaccuracies, or is inadequately supported. *Bray*, 554 F.3d at 1228; *Thomas*, 278 F.3d at 957. Moreover, a physician's opinion may be rejected if it is unsupported by the physician's treatment notes. *See Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003) (affirming ALJ's rejection of physician's opinion as unsupported by physician's treatment notes). As the ALJ noted, Plaintiff displayed normal hygiene, fair eye contact, cooperative behavior, normal speech, intact judgment, unimpaired

memory, and an average and normal stream of mental activity. Tr. 32 (citing Tr. 282-83) (MSE results). Here, the ALJ reasonably determined that the MSE results and clinical findings did not support the level of limitations opined by Dr. Seymanski. This was a specific and legitimate reason to reject the opinion.

Fourth, the ALJ found assessed limitations were inconsistent with Plaintiff's treatment records. Tr. 32. An ALJ may discredit a physician's findings that are unsupported by the record as a whole or by objective medical findings. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). The ALJ pointed out that about a month before Dr. Seymanski's evaluation, Tr. 473-95, Plaintiff told a treatment provider that she had been sober for one year and had started psychiatric medication a month earlier. Tr. 32 (citing Tr. 473) (on March 29, 2011, Plaintiff told provider Kathryn Shaw, ARNP that she had been sober since March of 2010); Tr. 480 (on March 3, 2011, Plaintiff told Ms. Shaw she began Lexapro about a month ago). On March 8, 2011, Plaintiff reported her depression was improving with this treatment. Tr. 32 (citing Tr. 479). The ALJ notes Ms. Shaw opined on March 8, 2011, that Plaintiff's affect was normal, Tr. 32 (citing Tr. 479), and on March 3, 2011, Ms. Shaw noted "no unusual anxiety or evidence of depression." Tr. 32 (citing Tr. 481). Here, the ALJ reasonably relied on Plaintiff's nearly contemporaneous treatment records that were inconsistent

with Dr. Seymanksi's assessed limitations. This was another specific, legitimate reason to reject Dr. Seymanski's assessed moderate to marked limitations.

### 3. Dr. Copeland

In October 2011, Brett Copeland, Psy.D., evaluated Plaintiff. Tr. 32-33 (citing Tr. 284-90). Plaintiff told Dr. Copeland she suffered from depression with psychosis and post-traumatic stress disorder (PTSD). Tr. 284. Dr. Copeland referenced Dr. Seymanski's evaluation six months earlier and noted Dr. Seymanski had diagnosed major depressive disorder, anxiety disorder NOS, and alcohol/cocaine dependence/abuse in sustained full remission. Tr. 264 (citing Tr. 278). Plaintiff reported she was attending psychotherapy appointments two to four times a month and was contemplating psychotropic medication but was apprehensive due to fear of side effects. Tr. 284. Dr. Copeland noted poor eye contact, restricted affect and tearfulness, psychomotor agitation, and pressured, tangential speech; in addition, Plaintiff reported symptoms consistent with PTSD. Tr. 285. Plaintiff told Dr. Copeland she had remained clean and sober for eighteen months. Tr. 286. Dr. Copeland assessed Plaintiff as moderately limited in the ability to learn new tasks, and as markedly limited in the ability to understand, remember and persist in tasks following simple instructions; understand, remember and persist in tasks following complex instructions; and perform routine tasks without undue supervision. Tr. 286-87. Dr. Copeland further assessed Plaintiff as

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 22

markedly limited in the ability to communicate and perform effectively in a work setting both with public contact and limited public contact. Tr. 287. Dr. Copeland further opined that it would be difficult to assess Plaintiff's prognosis until she "moved on" from a current medical concern,[9] and received empirically-supported treatment to address PTSD and bereavement associated with her daughter's death.[10] Tr. 287. The ALJ credited Dr. Copeland's opinion that Plaintiff's psychological impairments likely prevent her from working with the general public, but otherwise the ALJ gave this opinion little weight. Tr. 32-33.

Because Dr. Copeland's opinion was contradicted by Dr. Brown, Tr. 122-29, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Copeland's opinion. *Bayliss,* 427 F.3d at 1216.

First, the ALJ discounted Dr. Copeland's opinion because he relied on Plaintiff's self-reported symptom testimony, which as discussed *infra t*he ALJ properly found not to be credible. Tr. 32. A physician's opinion may be rejected if it is based on a claimant's subjective complaints which were properly discounted.

---

[9] Plaintiff told Dr. Copeland that she was "terrified by" abdominal tumors that needed to be removed in December 2011, about two months after Dr. Copeland's evaluation. Tr. 284.

[10] Dr. Copeland indicated Plaintiff's daughter died on January 14, 2009. Tr. 284.

*Tonapetyan,* 242 F.3d at 1149; *Morgan*, 169 F.3d at 602; *Fair*, 885 F.2d at 604.

The ALJ found that Dr. Copeland's expressed basis for his opinions consisted of

cursory statements based on Plaintiff's subjective reporting. Tr. 32. Here, the ALJ

does not cite specific instances in Dr. Copeland's report. Dr. Copeland noted, for

example, Plaintiff "is regularly neglecting her ADL's," which appears to be

Plaintiff's unreliable self-report. Because the record supports the ALJ's cited

reason, the Court finds this is a specific, legitimate reason to give limited weight to

Dr. Copeland's opinion.

Next, the ALJ gave Dr. Copeland's opinion less weight because Plaintiff

was not forthcoming about the extent of her alcohol use at this psychological/

psychiatric evaluation. Tr. 32. The record supports the ALJ's finding. *See*

*Coffman*, 469 F.App'x at 611 (affirming ALJ's rejection of examining

psychologist's opinion, in part, due to the fact that "plaintiff periodically

concealed" his substance abuse from providers); *Serpa*, 2013 WL 4480016, *8

(affirming ALJ's rejection of a physician's opinion because it was made without

knowledge of the claimant's substance abuse and narcotic-seeking behavior).

Here, the ALJ found, for example, in October 2011, Plaintiff told Dr. Copeland

that she had been clean and sober for the past eighteen months. Tr. 32 (citing Tr.

286). The ALJ noted, however, that in a psychotherapy session in September

2012, Plaintiff reported that she had been abusing alcohol on a continuous basis

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 24

between 2008 and March 2012, contradicting her October 2011 claim of extended

sobriety to Dr. Copeland.  Tr. 32 (citing Tr. 419) (on September 19, 2012, Plaintiff

told treating therapist Laurie Jones, MSW, that after her daughter died in 2008,[11]

Plaintiff began drinking and did not stop until March 2012).  As another example,

the ALJ found in October 2012, Plaintiff reported to examining psychologist Dr.

Burdge that she had been using marijuana for the past six years, also contradicting

the claimed eighteen months of sobriety Plaintiff had reported to Dr. Copeland in

October 2011.  Tr. 32 (citing Tr. 301) (in October 2012 Plaintiff told Dr. Burdge

she had used marijuana for the past six years, including most recently a month ago;

Plaintiff also reported she had been drinking about a dozen drinks a day, five days

a week and used alcohol and methamphetamine within the past week).  The ALJ

reasonably relied on Plaintiff's lack of candor regarding her substance abuse in

giving Dr. Copeland's opinion less weight.  This was another specific and

legitimate reason to reject the assessed mental limitations.

Third, the ALJ gave little weight to Dr. Copeland's opinion because the

level of severity implicated by it was inconsistent with essentially normal

psychological findings during March 2012 and October 2012 evaluations.  Tr. 32-

---

[11] Ms. Jones noted Plaintiff's daughter died at age twelve from brain cancer, in

2008.  Tr. 419.

33.  An ALJ may discredit a physician's findings that are unsupported by the record as a whole or by objective medical findings.  *Batson*, 359 F.3d at 1195.  As the ALJ noted, in September 2012, Plaintiff's treating therapist Laurie Jones, MSW, reported Plaintiff displayed appropriate appearance, unremarkable behavior, euthymic mood, appropriate speech and affect, intact memory, logical thought process and the ability to maintain attention.  Tr. 32 (citing Tr. 420).  As the ALJ further noted, in October 2012, examining psychologist Dr. Burdge reported Plaintiff displayed appropriate hygiene, cooperative behavior, occasional eye contact, normal speech, adequate comprehension, normal judgment, normal thought process, and normal concentration.  Tr. 32-33 (citing MSE results at Tr. 304-05).  As the ALJ additionally noted, Dr. Burdge found Plaintiff recalled one of three items after a five-minute delay, and her performance on the Trail Making tests was within the average range.  Tr. 33 (citing Tr. 301, 304).  Here, the ALJ reasonably determined that the MSE results and clinical findings did not support the level of limitations opined by Dr. Copeland, such as marked limitations in the ability to perform routine tasks and understand and persist with even simple instructions.  This was a specific and legitimate reason to give limited weight to Dr. Copeland's opinion.

Fourth, the ALJ rejected Dr. Copeland's opinions because they were inconsistent with Plaintiff's reported activities.  Tr. 33.  An ALJ may discount an

opinion that is inconsistent with a claimant's reported functioning. *Morgan*, 169

F.3d at 601-02. As the ALJ found, Plaintiff told Dr. Burdge in October 2012 that

for current hobbies and interests, she watched movies, visited parks and went to

family events. Tr. 33 (citing Tr. 300). The ALJ found, as another example, that in

December 2012, Plaintiff told treating counselor Ms. Jones she had begun

attending religious services twice a week. Tr. 33 (citing Tr. 397). The ALJ further

found, as an additional example, that in January 2013, Plaintiff told provider

Amelia Rutter, ARNP, that she was currently helping care for her mother. Tr. 33

(citing Tr. 409). The ALJ found these activities were inconsistent with Dr.

Copeland's opinions. Tr. 33. However, as all of these reported activities are after

Dr. Copeland's opinion, the Court does not find that this is a legitimate reason to

discredit Dr. Copeland's opinion.

Although the ALJ considered a reason that was not legitimate, the ALJ cited

other reasons that were legitimate and supported by substantial evidence which

support the ALJ's rejection of Dr. Copeland's opinion. *See, e.g., Morgan*, 169

F.3d at 601-02. Therefore, the outcome is the same despite the improper

reasoning. Errors that do not affect the ultimate result are harmless. *See Parra,*

481 F.3d at 747; *Curry*, 925 F.2d at 1131 (9th Cir. 1990) (finding ALJ error

harmless because it did not affect the result).

### 4. Dr. Burdge

In October 2012, Aaron Burdge, Ph.D., evaluated Plaintiff. Tr. 33 (citing Tr. 300-05). Plaintiff reported she had very low self-esteem, she had no close friends, she was "always sad," and she was unable to concentrate. Tr. 300. After Dr. Burdge conducted a clinical interview and administered tests, he diagnosed major depressive disorder, single episode, unspecified; alcohol and polysubstance dependence; and personality disorder NOS (with borderline, passive-aggressive and paranoid like features). Tr. 300-02. Dr. Burdge assessed marked limitation in the ability to understand, remember and persist in tasks by following detailed instructions; perform routine tasks without special supervision; adapt to changes in a routine work setting; and maintain appropriate behavior in a work setting. Tr. 302-03. Dr. Burdge assessed severe limitations in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; communicate and perform effectively in a work setting; and complete a normal work day and work week without interruptions from psychologically based symptoms. Tr. 302-03. The ALJ gave this opinion minimal weight. Tr. 33.

Because Dr. Burdge's opinion was contradicted by Dr. Brown, Tr. 122-29, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Burdge's opinion. *Bayliss,* 427 F.3d at 1216.

The ALJ noted Dr. Burdge gave "no expressed basis" for his multifaceted opinions of psychological disability.  Tr. 33.  Because the ALJ articulated several specific reasons for rejecting this opinion, the Court treats this as the ALJ's summary of the reasons for rejecting Dr. Burdge's opinion.

First, the ALJ rejected Dr. Burdge's opinion because it was inconsistent with his own examination findings.  Tr. 33.  An ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings.  *Tonapetyan*, 242 F.3d at 1149.  Here, the ALJ found that Dr. Burdge's own examination findings did not support his assessed limitations, including Plaintiff's mental status examination that yielded generally normal results.  Tr. 33.  For example, as the ALJ pointed out, Plaintiff displayed appropriate hygiene, cooperative behavior, occasional eye contact, normal speech, adequate comprehension, normal judgment, normal thought process, and normal concentration.  Tr. 33 (citing Tr. 304).  In addition, although Plaintiff recalled one of three items after a five-minute delay, a single abnormal finding, Plaintiff performed within the average range on the Trail making tests.  Tr. 33 (citing Tr. 301, 304).  The ALJ noted that these largely normal results were obtained despite Plaintiff's reported lack of current mental health treatment and recent substance abuse, *see* Tr. 301 (Plaintiff told Dr. Burdge she had used methamphetamine and alcohol "last week,"), indicating limitations were likely not as severe as assessed or

alleged.  This was a specific, legitimate reason to give limited weight to Dr.

Burdge's opinion.

Second, the ALJ rejected Dr. Burdge's opinion because it was inconsistent

with Plaintiff's activities.  Tr. 33.  An ALJ may discount a medical source opinion

to the extent it conflicts with the claimant's daily activities.  *Morgan*, 169 F.3d at

601-02.  The ALJ noted Plaintiff told Dr. Burdge her current hobbies and interests

included watching movies, visiting parks, and going to family events.  Tr. 33

(citing Tr. 300).  The Court does not find that the minimal activities identified are

inconsistent with Dr. Burdge's assessed limitations.  This was not a legitimate

reason to give Dr. Burdge's opinion minimal weight.

Third, the ALJ rejected Dr. Burdge's opinion because it was inconsistent

with other examination findings.  Tr. 33.  The ALJ did not cite the other

inconsistent examination findings.  The Court, accordingly, finds that this is not a

legitimate reason to give Dr. Burdge's opinion minimal weight.

Fourth, the ALJ rejected Dr. Burdge's opinion because test results suggested

exaggeration.  Tr. 33 (citing Tr. 311).  Evidence that a claimant exaggerated his

symptoms is a specific, legitimate reason to reject the doctor's conclusions.

*Thomas*, 278 F.3d at 958.  The ALJ rejected Dr. Burdge's opinion because his own

objective test results indicated some symptom exaggeration.  Tr. 33.  An ALJ is not

obliged to credit medical opinions that are unsupported by the medical source's

own data. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). In considering Dr. Burdge's report, the ALJ noted Plaintiff's results on the PAI indicated exaggeration, which made them unreliable. Tr. 33. The ALJ found that results showed Plaintiff "tended to portray herself in an especially negative or pathological manner." Tr. 33 (citing Tr. 311). Moreover, the ALJ found, Plaintiff's PAI results "reflected a pattern often associated with a deliberate distortion of the clinical picture, and items should be reviewed to evaluate the possibility of malingering." Tr. 33 (citing Tr. 311). This was a specific and legitimate reason to give limited weight to Dr. Burdge's opinion.

Fifth, the ALJ gave Dr. Burdge's opinion little weight because it appeared to be based on Plaintiff's unreliable self-report. Tr. 33. A physician's opinion may be rejected if it is based on a Plaintiff's subjective complaints which were properly discounted. *Tonapetyan*, 242 F.3d at 1149; *Morgan*, 169 F.3d at 604; *Fair*, 885 F.2d at 604. Here, given the ALJ's conclusion that Dr. Burdge did not rely on adequate objective medical evidence to form his opinion, he necessarily would have had to rely on subjective symptom testimony to form his opinion. To the extent Dr. Burdge did rely on Plaintiff's self-reported symptoms to form his opinion, it was not error for the ALJ to reject his opinion on that basis.

Although the ALJ considered reasons that were not legitimate, the ALJ cited other reasons that were legitimate and supported by substantial evidence which

support the ALJ's rejection of Dr. Copeland's opinion. *See, e.g., Morgan*, 169

F.3d at 601-02. Therefore, the outcome is the same despite the improper

reasoning. Errors that do not affect the ultimate result are harmless. *See Parra,*

481 F.3d at 747; *Curry*, 925 F.2d at 1131 (9th Cir. 1990) (finding ALJ error

harmless because it did not affect the result).

### 5. Dr. Cline

In September 2014, R. A. Cline, Psy.D., evaluated Plaintiff. Tr. 34 (citing

Tr. 752-56). Dr. Cline opined Plaintiff had mild or no limitations in the ability to

learn new tasks, adapt to changes in a routine work setting, and understand and

persist at simple instructions. Tr. 34 (citing Tr. 754-55). Dr. Cline further opined

Plaintiff had moderate limitations in the ability to plan independently,

communicate effectively in a work setting, ask simple questions, be aware of

normal hazards, make simple decisions, perform routine tasks, maintain regular

attendance, and understand and persist at detailed instructions. Tr. 34 (citing Tr.

755). Dr. Cline opined Plaintiff was markedly limited in the ability to maintain

appropriate behavior and complete a normal workday without psychological

interruption. Tr. 34 (citing Tr. 755). The ALJ gave this opinion minimal weight.

Tr. 34.

Because Dr. Cline's opinion was contradicted by Dr. Brown, Tr. 122-29, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Cline's opinion. *Bayliss*, 427 F.3d at 1216.

First, the ALJ found Dr. Cline's more severe assessed limitations were unsupported because Dr. Cline "gave no expressed basis" for his opinion, except to state that Plaintiff's "main barrier to employment is her personality traits of dependence and avoidance." Tr. 34 (citing Tr. 755). An ALJ need not accept a doctor's opinion if that opinion is brief, conclusory, and inadequately supported by clinical findings. *Tonapetyan,* 242 F.3d at 1149. The consistency of a medical opinion with the record as a whole is a relevant factor in evaluating a medical opinion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). Here, the ALJ's finding is supported by the record. For example, the ALJ found that the 2013 opinions of reviewing psychologists Dr. Fligstein and Dr. Brown are entitled to greater weight because they are consistent with both Plaintiff's psychological findings and reported activities, including Plaintiff's reported ability to serve as a caretaker for her mother. Tr. 23, 34 (citing Tr. 109-19, 122-29). In addition, although not specifically referenced by the ALJ, Dr. Cline noted that despite Plaintiff's allegation she had difficulty concentrating, she performed well on the MSE and in their conversation. Tr. 752. The ALJ's conclusion that Dr. Cline's opinion was

not adequately supported by clinical findings is supported by the record. In addition, an ALJ may discount a medical source opinion to the extent it conflicts with the claimant's daily activities. *Morgan* 169 F.3d 595 at 601-02. The ALJ noted Dr. Cline's assessed limitations were inconsistent with Plaintiff's reported functioning, including her self-reported ability to serve as a caretaker for her mother. Tr. 34. These were specific, legitimate reasons to give limited weight to Dr. Cline's opinion.

It is the role of the ALJ to resolve conflicts and ambiguity in the evidence. *See Morgan*, 169 F.3d at 599-600; *see also Sprague,* 812 F.2d at 1229-30. Because the ALJ's interpretation was rational, it must be upheld. In sum, Dr. Cline's opinion was inadequately supported by clinical findings, inconsistent with the record as a whole, and inconsistent with Plaintiff's activities. These are specific and legitimate reasons supported by substantial evidence for rejecting Dr. Cline's opinion.

## B. Plaintiff's Symptom Claims

Plaintiff contends the ALJ improperly discredited her symptom claims. ECF No. 17 at 16-18. An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other

symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted).

"The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim*, 763 F.3d at 1163 (internal citations and quotations omitted).

"General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester*, 81 F.3d at 834); *Thomas*, 278 F.3d at 958 ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

In making an adverse credibility determination, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between her testimony and her conduct; (3) the claimant's

daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

This Court finds the ALJ provided specific, clear, and convincing reasons for finding that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms "are not credible." Tr. 26.

### 1. Lack of Objective Medical Evidence

First, the ALJ found the objective evidence does not support the degree of symptoms alleged. Tr. 26-28. An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair*, 885 F.2d at 601. However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. §416.929 (c)(2). Minimal objective evidence is a factor which may be relied upon in discrediting a claimant's testimony, although it may not be the only factor. *See Burch v. Barnhart*, 400 F.3d 676, 689 (9th Cir. 2005).

The ALJ found medical treatment records in 2007 refer to ongoing issues with alcohol and depression, but do not refer to any psychiatric medication or treatment for psychological issues besides chemical dependency services. Tr. 26

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 36

(citing *e.g.*, Tr. 718) (on May 15, 2007, Plaintiff told provider Melia Delp, R.N., she was going into an alcohol treatment program later that month; no psychiatric medication or mental health treatment is mentioned).  The ALJ further found, as anther example, that medical treatment in 2008 documented sustained sobriety and benign psychological signs.  Tr. 26 (citing Tr. 704-05) (in February 2008, Plaintiff told provider Holly Bales, ARNP, that she had been sober for five months; Plaintiff was noted to be "alert, oriented, with appropriate speech and dress.").  As the ALJ further found, in March 2009, Ms. Bales observed Plaintiff had normal mood and affect, as well as normal memory and normal judgment.  Tr. 26 (citing Tr. 697). The ALJ also noted that at an examination in April 2011, Plaintiff displayed normal hygiene, fair eye contact, cooperative behavior, normal speech, intact judgment, unimpaired memory, and an average and normal stream of mental activity.  Tr. 27 (citing Tr. 282-83) (examining psychologist Dr. Seymanksi's opinion and MSE results).  Plaintiff's psychotherapy records in 2011 reflected "spotty" attendance due to Plaintiff spending time with family in another town; in addition, in August 2012 Plaintiff told provider Selma Suzuki, LMFT, she was voluntarily ending mental health treatment early to relocate to live with family.  Tr. 27 (citing Tr. 299).  In September 2012, treating therapist Laurie Jones, MSW, found Plaintiff displayed appropriate appearance, unremarkable behavior,

euthymic mood, appropriate speech and affect, intact memory, logical thought process, and was able to adequately maintain attention. Tr. 27 (citing Tr. 420).

In October 2012, examining psychologist Aaron Burdge, Ph.D., opined that, despite substance abuse, Plaintiff displayed appropriate hygiene, cooperative behavior, occasional eye contact, normal speech, adequate comprehension, normal judgment, normal thought process and normal concentration; further, Dr. Burdge noted Plaintiff recalled one of three items after a five-minute delay and Trail making test results fell within the normal range. Tr. 28 (citing Tr. 301, 304).

The ALJ also found, as additional examples, that during treatment between November 2012 and February 2013, Plaintiff consistently exhibited appropriate appearance, unremarkable behavior, euthymic, appropriate speech and affect, intact memory, logical thought process, average intellect, fair judgment, and the ability to maintain attention –these findings were noted, the ALJ points out, despite Plaintiff's continued reports of substance abuse. Tr. 28 (citing Tr. 393-402); moreover, in January 2013, treatment provider Amelia Rutter, ARNP, found Plaintiff displayed no unusual anxiety or evidence of depression. Tr. 28 (citing Tr. 410).

The ALJ reasonably determined that the objective evidence, including MSE results and clinical findings of treating and examining providers did not support the level of symptoms and limitations alleged by Plaintiff. Because this was not the

sole basis for the ALJ's credibility assessment, this is a clear and convincing

reason supported by substantial evidence.

### 2. *Inaccurately Reported Substance Abuse*

The ALJ found that Plaintiff "has inaccurately reported her substance abuse

in a manner that detracts from her overall credibility[.]" Tr. 27. Conflicting or

inconsistent testimony concerning alcohol or drug use can contribute to an adverse

credibility finding. *Thomas*, 278 F.3d at 959; *Verduzco v. Apfel*, 188 F.3d 1087,

1090 (9th Cir. 1999). Moreover, an ALJ may also consider a Plaintiff's reputation

for truthfulness in evaluating their credibility. *Thomas,* 278 F.3d at 959.

The ALJ found Plaintiff inaccurately reported her substance abuse during

evaluation and treatment and this diminished Plaintiff's credibility. Tr. 27. For

example, the ALJ found that at an evaluation in October 2011, Plaintiff told

examining psychologist Dr. Copeland she had been clean and sober for the past

eighteen months (which would be approximately April 2010). Tr. 27 (citing Tr.

286). The ALJ noted, however, that in September 2012, Plaintiff told treating

therapist Ms. Jones that she had abused alcohol from 2008 until March 2012 and

had been alcohol and drug free since March 2012. Tr. 27 (citing Tr. 419). The

ALJ is correct that these statements are inconsistent since Plaintiff reported she

was clean in October 2011, Tr. 286, and also reported she abused alcohol from

2008 until March 2012, Tr. 419. The ALJ further found, as another example, that

during another psychological evaluation in October 2012, Plaintiff told evaluating psychologist Dr. Burdge that she had been using marijuana for the past six years, including in the previous month. Tr. 27-28. In addition, Plaintiff told Dr. Burdge she had used alcohol and methamphetamine in the past week, and had been drinking alcohol five days a week in an amount of approximately twelve drinks a day. Tr. 27-28 (citing Tr. 301). The ALJ is correct that this is inconsistent with Plaintiff's September 2012 statement to Ms. Jones that she had been clean and sober since March 2012. Tr. 28 (citing Tr. 304). The ALJ's finding that Plaintiff inaccurately reported her substance abuse is a specific, clear and convincing reason to discount her testimony.

### 3. Failure to Follow Recommended Treatment

Next, the ALJ rejected Plaintiff's symptom claims because Plaintiff did not seek treatment as recommended. Tr. 28. It is well-established that unexplained non-compliance with treatment reflects on a claimant's credibility. *See Molina*, 674 F.3d at 1113-14; *Tommasetti*, 533 F.3d at 1039.

The ALJ noted that Plaintiff failed to follow even minimal mental health treatment. Tr. 28. For example, Plaintiff had no mental health treatment between February 2013 and September 2013, a period of seven months. Tr. 28. The ALJ noted Plaintiff then underwent a mental health assessment in September 2013 where she reported alcohol dependence in early remission, as well as anxiety and

depression.  Tr. 28 (citing Tr. 584-87).  In October 2013, Plaintiff told treating

therapist Kristal Mata, M.S., she had been sober for a month, denied wanting help

with her addiction, and stated she was "taking care of it myself."  Tr. 28 (citing Tr.

596).  As part of her treatment, Plaintiff was given homework, to aid in coping

with symptoms of depression and anxiety; however, when Plaintiff returned to

therapy in December 2013, Plaintiff said that she had thrown it away.  Tr. 28

(citing Tr. 594) (Ms. Mata advised Plaintiff she needs to be willing to do work

outside of session if she wants to see improvement).  Plaintiff indicated she would

complete the homework by the next session, but did not do so.  Tr. 28 (citing Tr.

592) (in January 2014 Plaintiff admitted to Ms. Mata that she had not done the

homework due to "avoidance.").  The ALJ found when Plaintiff returned to mental

health for a psychiatric evaluation with Frank Garner, M.D., later in January 2014,

Plaintiff reported that she had been heavily involved in methamphetamine use in

the summer of 2013 but had been sober since October 2013.  Tr. 28 (citing Tr. 579-

80).  The ALJ notes Dr. Garner began Plaintiff on psychiatric medication, Tr. 582,

but thereafter, there has been no subsequently documented mental health care.  Tr.

28.  Plaintiff's unexplained failure to follow treatment is a clear and convincing

reason to discredit her symptom testimony.

### 4. Daily Activities

The ALJ found Plaintiff's activities indicate a generally intact psychological state. Tr. 27. Evidence about daily activities is properly considered in making a credibility determination. *Fair*, 885 F.2d at 603. However, a claimant need not be utterly incapacitated in order to be eligible for benefits. *See Orn*, 495 F.3d at 639 ("the mere fact that a plaintiff has carried on certain activities . . . does not in any way detract from her credibility as to her overall disability."). Regardless, "[e]ven where [Plaintiff's] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113.

Here, Plaintiff testified that she spent most of her time in her bedroom within her parents' home. Tr. 26 (citing Tr. 46, 53). Plaintiff also testified she has impaired concentration to the extent that she is unable to perform household cooking. Tr. 25 (citing Tr. 53, 74-75). However, as the ALJ observed, since mid-2012, Plaintiff has repeatedly reported that she was serving as a caretaker for her mother. Tr. 23 (citing Tr. 299) (in August 2012 Plaintiff told treating therapist Selma Suzuki, LMFT, she moved to live with family in Yakima to feel safe and help her mother, who has cancer). As another example, the ALJ noted in January 2013, Plaintiff told treatment provider Amelia Rutter, ARNP, that she was now helping her mother who had "late-stage cancer." Tr. 23 (citing Tr. 409). The ALJ

further found, as yet another example, that in December 2013, Plaintiff reported told hospital providers she was "currently helping to care for her mother who has a brain tumor." Tr. 23 (citing Tr. 551). Furthermore, the ALJ noted that in June 2014, Plaintiff told providers she "has been getting exercise mostly at home, going up and down the stairs, etc. Taking care of her mother who has cancer"; Tr. 23 (citing Tr. 625), and in December 2013, Plaintiff requested genetic testing and reported that her mother "has ovarian cancer" and Plaintiff was working as a care giver for her mother. Tr. 23 (citing Tr. 643). The ALJ found Plaintiff also reported she visited parks and went to family events and attended religious services twice a week. Tr. 24 (citing Tr. 330, 397) (in December 2012, Plaintiff told provider Ms. Jones she has begun attending church twice a week). The ALJ found Plaintiff told Dr. Burdge in October 2012 that she regularly watched movies. Tr. 24 (citing Tr. 300). The ALJ further found, moreover, that at the hearing, Plaintiff testified she had her own business in 2009 that produced and sold food and jewelry, primarily through phone sales. Tr. 26-27 (citing Tr. 63, 66-67) (Plaintiff testified that in 2009 she was working making fry bread and selling bead work, and sales were mainly by phone). Because these reports of specific activities are inconsistent with Plaintiff's testimony, the ALJ was permitted to discredit Plaintiff's testimony.

1    Plaintiff contends the ALJ grossly mischaracterized the extent of Plaintiff's

2    daily activities, including that she helps her mother.  ECF No. 17 at 18.  Although

3    Plaintiff testified that she does not take care of her mother, Tr. 49, this was

4    contradicted as the ALJ noted by Plaintiff's numerous contrary statements to

5    medical examiners and providers.  Tr. 23 (citing Tr. 299, 409, 551, 625, 643

6    (Plaintiff's previously noted multiple statements that she was a caregiver for her

7    mother).  Even if the evidence of Plaintiff's daily activities may be interpreted

8    more favorably to the Plaintiff, it is susceptible to more than one rational

9    interpretation, and therefore the ALJ's conclusion must be upheld.  *See Burch*, 400

10   F.3d at 679.  Thus, Plaintiff's daily activities were reasonably considered by the

11   ALJ as inconsistent with her complaints of disabling symptoms and limitations.

12        The ALJ identified the lack of supporting objective evidence, inaccurately

13   reported substance abuse, failure to follow recommended treatment and activities

14   of daily living as inconsistent with Plaintiff's testimony regarding the intensity,

15   persistence, and limiting effects of her symptoms.  Through these findings, the ALJ

16   established specific, clear and convincing reasons for discrediting Plaintiff's

17   testimony.

18   **C.    Substantial Evidence and Step Five Determination**

19        Plaintiff contends the ALJ erred at step four and step five of the sequential

20   evaluation process.  ECF No. 17 at 19-20.  At step four and five, the ALJ considers

a claimant's ability to return to past relevant work or, alternatively, whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(iv), (v). A vocational expert may appropriately testify as to: (1) the claimant's ability to return to past relevant work; (2) what jobs the claimant, given her residual functional capacity, would be able to do; and (3) the availability of such jobs in the national economy. S.S.R. 82-61; *Gamer v. Sec'y of Health and Human Servs.*, 815 F.2d 1275, 1279 (9th Cir. 1987).

First, Plaintiff disagrees with the ALJ's evaluation of the medical opinion evidence and credibility determination. ECF No. 17 at 19. However, this simply restates Plaintiff's previous contentions. "In arguing the ALJ's hypothetical was incomplete, [claimant] simply restates her argument that the ALJ's RFC finding did not account for all her limitations because the ALJ improperly discounted her testimony and the testimony of medical experts. As discussed above, we conclude the ALJ did not." *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008). Here, the Court has determined the ALJ properly weighed the medical evidence and Plaintiff's testimony. Plaintiff fails to establish any error at step four. The ALJ's determination that Plaintiff is able to perform past relevant work is fully supported. Plaintiff challenges the ALJ's alternative step five finding. Because

the step five determination is an alternative finding, the Court need not discuss it.

Nonetheless, the Court elects to briefly address the argument.

Citing no legal authority, Plaintiff contends that according to the VE's testimony, "even the limitations found by the ALJ in his RFC assessment preclude competitive employment." ECF No. 17 at 19 (citing Tr. 25, 88-90). This is not an accurate characterization of the VE's testimony.

The ALJ found that Plaintiff would be off-task for ten percent of her work shifts, "but will otherwise be able to meet production standards," and Plaintiff would be absent from work once a month or less." Tr. 25. Plaintiff alleges that the VE testified a person with this combination of limitations would likely be terminated. ECF No. 17 at 19 (citing Tr. 91). "If the assumptions in the hypothetical are not supported by the record, the opinion of the vocational expert that claimant has a residual working capacity has no evidentiary value." *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984). "It is, however, proper for an ALJ to limit a hypothetical to those impairments that are supported by substantial evidence in the record." *Osenbrock*, 240 F.3d at 1165.

Here, the VE testified that an employee that is distracted ten percent of the time will probably not result in any difficulties. Tr. 90. He also testified that up to one absence per month will be tolerated. Tr. 90-91. When asked if a person had both a ten percent off-task limitation and a once per month rate of absenteeism, the

VE responded that "it's a problem." Tr. 91. However, when asked to reduce the pool of available jobs to workers with both assessed limitations, the VE testified the total numbers would, more likely than not, be reduced by approximately 66 to 75 percent of the jobs identified. Tr. 92-93, 95. Plaintiff contends the VE admitted a reduction of available jobs to 25 percent "was only an estimate," but this is misleading. ECF No. 17 at 19 (citing Tr. 92, 94). The VE actually testified that the range of 66 to 75 percent, while an estimate, "I think is pretty accurate." Tr. 95.

The ALJ's step five finding is supported by substantial evidence.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error.

**IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, ECF No. 17, is **DENIED**.

2. Defendant's Motion for Summary Judgment, ECF No. 22, is **GRANTED.**

The District Court Executive is directed to file this Order, enter JUDGMENT FOR THE DEFENDANT, provide copies to counsel, and **CLOSE THE FILE.**

DATED this September 25, 2017.

s/*Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE